# CHARLESTON.

CRUMLISH'S ADMINISTRATOR *v.* SHENANDOAH VAL. R. Co.

FIDELITY INSURANCE, TRUST & SAFE-DEPOSIT Co. *v.* SAME.

(Submitted Sept. 12, 1898—Decided Dec. 10, 1898.

RES ADJUDICATA—*Admissions—Record.*

>    If a party would be entitled to the benefit of a decree as *res judicata* to the prejudice of another afterwards make an admission of record in the case, inconsistent therewith, detracting from his right under said decree, and such admission is the truth, he cannot rely on such decree as *res judicata.* (p. 576).

Appeal from Circuit Court, Jefferson County.

Bills by H. H. Crumlish's administrator against the Shenandoah Valley Railroad Company and the Fidelity Insurance, Trust & Safe-Deposit Company against the same defendant. From a decree settling the accounts of one McDonald, receiver of an intervening creditor, he appeals.

*Affirmed.*

DANIEL B. LUCAS and A. W. McDONALD, for appellant.

F. P. CLARK, for appellee.

BRANNON, PRESIDENT :

It seems useless to write an opinion in this case, as it involves only the construction of a contract, and no legal principles of guidance to the public. But it is customary. The Shenandoah Valley Railroad was under a decree of sale for its indebtedness. A part of such indebtedness

was a recovery in the name of McDonald, receiver of the Central Improvement Company, against the Shenandoah Valley Railroad Company, amounting, February 10, 1891, to seven hundred and ninety-one thousand three hundred and thirty-eight dollars and nine cents ; but that was subject to a prior lien. There was danger that the debt of the Central Improvement Company would be lost under the prior lien by failure of the railroad to sell for enough to pay both debts; and Moore, Lucas, and others, representing one hundred and twenty-eight thousand dollars out of one hundred and thirty-eight thousand dollars stock of the Central Improvement Company, made an arrangement with certain parties acting under the name of the Memphis & Atlanta Construction Company, to bid, at the coming sale of the road, a sum sufficient to pay the debt of the Central Improvement Company, and for making such bid agreed to pay said Memphis & Atlanta Construction Company one hundred and sixty thousand dollars. Afterwards, by a written contract, dated September 27, 1890, between Lucas, Moore, and McKeehn, attorneys for stockholders owning said one hundred and twenty-eight thousand dollars stock of the Central Improvement Company, of the one part and the Norfolk & Western Railroad on the other part, the said attorneys sold to the Norfolk & Western Railroad Co. for the consideration of five hundred thousand dollars, said one hundred and twenty-eight thousand dollars stock. The Norfolk & Western Company was already the owner of three hundred and sixty-two thousand one hundred and thirty-six dollars and forty-eight cents of three hundred and eighty-one thousand nine hundred and ninety-six dollars and seventy-one cents of the indebtedness of the Central Improvement Company. Thus the Norfolk & Western Company owned one hundred and twenty-eight thousand dollars out of one hundred and thirty-eight thousand dollars of the capital stock of the Central Improvement Company, and three hundred and sixty-two thousand one hundred and thirty-six dollars and forty.-three cents indebtedness against it. By said agreement the Norfolk & Western Company agreed to purchase at the coming sale of the Shenandoah Valley Railroad at a price large

enough to cover the claim of the Central Improvement Company, and it did later buy the property, and paid to McDonald, receiver, fifty thousand dollars, retaining in its hands the balance of the sum for which it purchased the property, it being thought by the parties useless to require the Norfolk & Western Company to pay the full amount, since it owned the bulk of the stock and of the indebtedness ot the Central Improvement Company; and, if it had paid the whole, it would be decreed at once back to it on account of its ownership of debts and stock. After these transactions, Scott, Jewett, and McFadden, claiming to be owners of the stock of the Central Improvement Company, came into this litigation asking to be permitted to participate in the fund going to the Central Improvement Company as such stockholders, and the litigation touching them resulted in the disallowance of the claims of Scott and Jewett as stockholders, and the allowance of the claim of Mc-Fadden to the extent of four one hundred and thirty-eighths of the stock. This will appear from a former decision of this Court in this case, found in 40 W. Va. 627, (22 S. E. 90), where facts will more at large appear. Some time after the agreement of September 27, 1890, when the Norfolk & Western acquired the one hundred and twenty-eight thousand dollars stock of the Central Improvement Company, and before our said former decision, the Norfolk & Western Company bought in from Hunt and Hilliard six thousand dollars of stock of the Central Improvement Company, and was thus the owner of one hundred and thirty-four thousand dollars of the one hundred and thirty-eight thousand dollars total stock. McFadden owning four thousand dollars. When the cause went back to the circuit court, an order was made referring the cause to a commissioner, to settle the accounts of McDonald, receiver, and upon his report a decree was entered requiring him to pay, as the balance in his hands, twenty-two thousand nine hundred and forty-seven dollars and ninety-four cents, and from this decree McDonald appealed.

McDonald complains that the circuit court rejected certain credits claimed by him. I shall therefore take them up for consideration. One is the sum of eleven thousand

five hundred and ninety-four dollars and twenty cents, claimed by the receiver as paid McDonald, Moore, and Lucas, attorneys, as ten one hundred and thirty-eights of the one hundred and sixty thousand dollars expended in procuring the Memphis & Atlanta Company to make the by-bid above spoken of. The Court in 40 W. Va. 627, (22 S. E. 90), held said one hundred and sixty thousand dollars to be a proper expenditure so as to enable those stockholders of the Central Improvement Company who incurred the expenditure to charge other stockholders outstanding, and not concurring in the expenditure, with a portion thereof, conforming to the amount of their stock. It expressly decreed that McFadden should be charged therewith. The question, then, is, did the court properly reject the said credit of eleven thousand five hundred and ninety-four dollars and twenty cents so paid by McDonald for the portion of the one hundred and sixty thousand dollars as chargeable to the Hunt and Hilliard stock and the McFadden stock? It is claimed that our former decision, holding that outstanding stock should be charged to contribute to pay said one hundred and sixty thousand dollars is *res judicata*, and concludes the question in favor of the said credit. It clearly would compel Hunt and Hilliard, if they yet owned the stock, to pay their portion, but the Norfolk & Western Company owned the stock at the time of our decision. That decision was in a contest between the stockholders of the Central Improvement Company—that is, the Norfolk & Western Company, as purchasers of the one hundred and twenty-eight thousand dollars stock, and Scott, Jewett, and McFadden, who were outstanding stockholders, not consenting to the expenditure of the one hundred and sixty thousand dollars—as to whether said outstanding stockholders should be let in as stockholders, and, if so, whether they should be charged with a portion of the one hundred and sixty thousand dollars; whereas we now have in hand a contest between the Norfolk & Western Company and those parties who acted as attorneys, selling to it one hundred and twenty-eight thousand dollars stock of the Central Improvement Company, under the contract of September 27, 1890, as to whether they

shall charge against the Norfolk & Western Company a portion of the one hundred and sixty thousand dollars; whether the receiver could pay them, and get credit for so doing. It is not, therefore, *res judicata* as to this credit. The question now is upon a settlement between receiver and depositor. The question then was not, shall the Norfolk & Western Company, as owners of the Hunt and Hilliard stock, be charged with contribution to reimburse the expenditure? but that is the question now. The decision would not bind Hunt and Hilliard. Though they had sold their stock to the Norfolk & Western at the date of the former decree; yet what that company should pay for such contribution on the Hunt and Hilliard stock, or whether anything, was not an issue, and was not decided. The said contract of September 27,1890, was then in evidence in the case, but its construction was not in issue. Its construction, as between the parties to it, was not passed on. I did say in argument that I did not think that contract forbade those stockholders who paid one hundred and sixty thousand dollars from charging other stockholders with contributions, but I said nothing as to the rights under that contract of the parties to it between themselves. We are thus called on to construe that contract. By it Lucas, Moore,and McKeehn, attorneys for certain stockholders of the Central Improvement Company, sold, for five hundred thousand dollars, one hundred and twenty-eight thousand dollars of the one hundred and thirty-eight thousand dollars stock of that company. Now, after this sale I take it that these attorneys or stockholders could not have maintained any suit to demand of the Norfolk & Western Company any part of the one hundred and sixty thousand dollars; nor could they have maintained any suit against Hunt and Hilliard, nor against McFadden, for their right on account of having paid that one hundred and sixty thousand dollars was not such as could constitute the basis of a suit. True, if they had remained stockholders, and Hunt and Hilliard or McFadden had applied for admission as stockholders to the fund going to stockholders, they could have compelled them, as a condition of admission, to abate from their stock its ratable contribution to reim-

burse those stockholders who had incurred the outlay; but they had sold their stock to the Norfolk & Western Company. Had they any longer any right to demand anything of Hunt and Hilliard? Their right as stockholders had passed to the Norfolk & Western Company, and, if anybody had right to demand contribution, that company had, as purchasers of the stock. I do not see that, after such sale, those former stockholders had any longer any right under their expenditure of the one hundred and sixty thousand dollars. The Norfolk & Western Company acquired the Hunt and Hilliard stock after the sale of the one hundred and twenty-eight thousand dollars stock to the Norfolk & Western Company, and it seems to me that thereafter there remained not a vestage of demand which could be set up by those stockholders who had sold against Hunt and Hilliard or the Norfolk & Western, their assignee. So much for the force of the mere sale itself. But, in addition to the mere force of the sale itself, let us consider other positive provisions of the contract of September 27, 1890. By its fourth clause the said sellers of the stock became responsible for all prior costs in the litigation, "and the counsel and receiver in these cases agree to relinquish all claims for fees or commissions, except such as is paid them out of the $500,000 they may now or they may hereafter have for fees or compensation of any nature;" and one of the attorneys agreed to continue in the litigation for the Norfolk & Western without further pay. Does not this mean that the sellers would not hold the Norfolk & Western Company, their vendee, responsible for any further demand for fees, commissions, or "compensation of any nature?" This broad language evinces a purpose to sell the Norfolk & Western all their interest and rights outright when they sold the stock. The words "compensation of any nature" would seem aptly to fit the demand for compensation for the money they had paid out in the expenditure of one hundred and sixty thousand dollars. At any rate, the language and spirit of the contract manifest a purpose to sell all their interest outright to the Norfolk & Western Company, free of further demand from them. It seems neither equitable nor within the let-

·ter of this stipulation that they should now demand of the Norfolk & Western Company a large contribution on account of the Hunt and Hilliard stock, afterwards acquired by it. I think they are estopped by the very meaning of that contract. All their rights were embodied in the consideration paid for this stock. That was to pay them in full. The writing breathes and speaks this meaning.

Appellant McDonald also complains that the court below rejected a credit claimed by him of eight thousand six hundred and ninety-five dollars and sixty-two cents, as paid himself (McDonald), Moore and Lucas, attorneys,— the portion of the two hundred thousand dollars attorneys' fees, charged upon the six thousand dollars, of the Hunt & Hilliard stock acquired by the Norfolk & Western Company after agreement of September 27, 1890. I need say nothing further as to this item than what I have said above. The fourth clause relinquishes all claim to attorneys' fees. The former decision of this Court as to the McFadden stock denied the right to charge it for its fractional share of two hundred thousand dollars, and directed that it be charged only with a reasonable sum; and how, under that ruling, the receiver could pay those attorneys, he being one of them, six one hundred and thirty-eighths of two hundred thousand dollars for attorneys' fees against the Hunt and Hilliard stock, I cannot see. If charged at all, it would only be a sum fixed by the circuit court, as held in said former decision ; and it has refused to allow anything, and properly so, because these attorneys relinquished all claim of further fees against the Norfolk & Western Company by said agreement. The Court decided in 40 W. Va. 627 (S. E. 90), that stockholders whose stock was held by the attorneys and sold to the Norfolk & Western Company could charge other stockholders with a fair sum for attorneys' services, but we did not decide that the attorneys could charge the Norfolk & Western Company for attorneys' services rendered on stock then bought by it from them, or on stock which it might acquire from others. The rights of the parties under that agreement were not before the court. It was only said that it did not debar those stockholders who had paid attorneys' fees

from claiming from other stockholders contribution therefor. So far that contract was construed, but no further. Whether it debarred the attorneys from claiming fees against their vendee, the Norfolk & Western Company, was not before us. And then, again, this receiver had no right to pay this sum to himself and others without specific orders from the court. We agree with the circuit court in denying this item of eight thousand six hundred and ninety-five dollars and six-two cents.

We also agree with the circuit court in denying the credit of seven hundred and thirteen dollars and fifty-six cents, his receiver's commission on the Hunt and Hilliard stock. The reasons are (1) McDonald was a co-attorney with Lucas and others, and as an individual knew all and assented to the whole agreement whose fourth clause relinquished commissions. (2) He signed a memorandum on the said contract of September 27th, 1890, binding him to become jointly responsible with other parties of its first part for the guaranty of the fifth article, and thus knew of and assented to the fourth clause. He thus became a party to it. The clause says that "the counsel and receiver in these cases agree to relinquish all claims for fees and commissions." What receiver? None other than McDonald. What counsel? None other than he and others, his associate counsel. It estops the receiver and attorneys from claim for receiver's commission and attorneys' fees. It is in the case, and we must give it effect thus far.

For similar reasons we agree with the circuit court in disallowing credit for two hundred and eighty-nine dollars and eighty-four cents, receiver's commissions on McFadden's stock.

We agree with the circuit court in disallowing credit for ten dollars for copying petitions for Scott and Jewett's appeal, and sixteen dollars and fifty cents for a copy of JUDGE BRANNON'S opinion. We see no need of them such as to charge the fund. The receiver was not called upon to defend the claim of Scott and Jewett, and, if he wanted these documents to use for himself and other attorneys, they are not chargeable to the fund.

Having disposed of the objections to the decree made by appellant McDonald without finding any error, I come to complaints against it made by the Norfolk & Western Company. It claims that the sum of six thousand six hundred and forty-six dollars and two cents, paid by the receiver to satisfy the McFadden recovery, should not have been allowed McDonald. The former decree entitled McFadden to it as against the Norfolk & Western Company, and it was right to pay it out of the fund. The Norfolk and Western Company claims that by reason of clause five of said contract of September 27th, McDonald cannot be credited this six thousand six hundred and forty-six dollars and two cents, as by it Moore, McKeehn, McDonald, and Lucas indemnified the company against the appearance and allowance of any outstanding stock not participating in the agreement. This fifth clause says: "The parties of the first part further agree to, and do hereby, indemnify it against any demands which may be established against it before any court by reason of this agreement at the suit of any holders of stock in said Central Improvement Company who are not represented by the parties of the first part." We have concluded that as Lucas, Moore and McKeehn are not in any way parties to this clause, and McDonald not as an individual, we cannot construe that fifth clause, or say what are the rights or obligations of any of the parties under it. We could not decree against McDonald on it in this case, because it is not involved in the pleadings, and we could not decree against him, or fix any liability on him, without Lucas, Moore and McKeehn as parties. Therefore the question whether the Norfolk & Western has the right to hold them responsible under it to indemnify it because of the allowance of the McFadden stock or the Hunt and Hilliard stock is left open for another suit or proceedings, if any shall be instituted, without prejudice to any party from this decision. Hence we cannot reverse the circuit court's action in allowing McDonald, as receiver, credit for said six thousand six hundred and forty-six dollars and two cents.

The Norfolk and Western complains that McDonald was allowed credit as receiver for one thousand and one hun-

dred dollars as paid for attorneys' fees to himself, Lucas and Moore for attorneys' fees charged for the McFadden stock. We think it was improperly allowed, because waived by said fourth clause. It was right to abate it from McFadden, but its abatement inured to the benefit of the Norfolk & Western Company.

In view of the contention of the attorneys for the Norfolk & Western Company that a decree of September 28, 1893, is *res judicata*, and that McDonald must be chargeable by it, it may be proper to refer to this subject. That decree, upon the admission of McDonald that there was in his hands, as receiver, sixty-one thousand nine hundred and forty dollars and three cents, directed that McDonald pay out of it certain costs, and then pay to the Norfolk & Western Company one hundred and thirty-four one hundred and thirty-eighths of the residue, which would amount as claimed, to fifty-nine thousand and sixty-three dollars and forty-one cents. I feel the force of the argument of *res judicata* made by the counsel; but the truth is that that result was attained by a statement made by a commissioner, which has not been further acted on in the case, based on the debit charged to the receiver of the whole purchase money for which the Norfolk & Western Company purchased the railroad; whereas the truth is that no money but fifty thousand dollars ever went into McDonald's hands, as I have above stated, and the Norfolk & Western Company made the solemn admission in the subsequent decreee of November 5, 1896, that the sum paid McDonald, out of which that company was asking a decree against him, was fifty thousand dollars, and therefore I think this binds the company, and breaks the force of the argument of *res judicata*. Anyhow, it is just to charge McDonald with only fifty thousand dollars. As the company was the party retaining the money, and was allowed to do so at its request, it would be against equity to allow it with all the money over fifty thousadd dollars in its pocket, to charge McDonald more than he received. It asked to retain all over the fifty thousand dollars, and, if we tolerate this argument of *res judicata*, and compel McDonald to pay beyond fifty thousand dollars, we would allow

the Norfolk & Western Company to recover for money which it itself retained. It is estopped from so.doing by its own act. The true .balance due from Receiver Mc-Donald was twenty-four thousand and twenty-two dollars and ninety-four cents, on December 14, 1896, the date of the circuit court's decree, instead of twenty-two thousand nine hundred and twenty-two dollars and ninety-four cents as found by said decree.

NOTE BY DENT, JUDGE :

I concur in the conclusion reached in this case, but not with por - tions of the argument contained in the opinion in so far as it is an attempt to construe the provisions of the bond of indemnity given by Lucas, Moore, and McKeehn, and indorsed by McDonald. Such bond has never been brought before the Court on an issue or pleadings, nor have the parties thereto been summoned and impleaded in any manner. The bond was introduced as a mere incidental part of the evidence. The present litigation is narrowed down in fact as being between the Norfolk & Western Railroad Company on the one side and Charles McFadden on the other. As between the company and its guarantors. at present there is no litigation pending and it is improper and *coram non judice* now to decide, as between them, as to who is entitled to the *pro rata* contributions of the receiver's commissioners' and attorneys' fees, and the one hundred and sixty thousand dollars by-bid expenditure. The company should be allowed to retain them with all ultimate legal rights thereto reserved. If they are covered by the bond of indemnity, this leaves them where they properly belong ; and, if not, and other persons, not parties to the cause, think they are entitled to them, and that they can recover them notwithstanding the bond of indemnity, they should be at liberty to do so ; and not being before the court properly, they are not bound by a judicial determination made in their absence. The decree of the 13th December, 1895, should be so modified as to allow the one thousand one hundred dollars attorneys' fee deducted from Charles McFadden to remain under the control of the Norfolk and Western Company, along with Hunt and Hilliard and other fees. If the attorneys or receiver deem themselves entitled to them notwithstanding their bond of indemnity, they have their action at law ; and if the Norfolk & Western Railroad Company deems itself entitled to recover from its indemnifiers the amount paid Charles McFadden, or for the Hunt and Hilliard stock, it has its remedy on its bond. And

>"Let the poet resume his pen,
>And prove himself the best of men,"

*Affirmed,*